TYBER, J.
These causes have been argued at much length, and many questions discussed -which it is deemed unnecessary to decide, because we think, according to the plainest and best established principles of a court of chancery, admitting the equity of the appellees to have been ascertained by a decree of the Circuit Court of the District of Columbia, in 1817, that they have lost all right to enforce it against the appellants : Eirst, by laches and lapse of time, and, secondly, because the appellants are purchasers for valuable consideration, without notice.
It appears from the records in these cases, that sometime prior to 1819, Massie, one of the appellants, hearing that the land in controversy belonged to Mrs. Greenhow, agreed with a certain William B. Jacobs to purchase the same; and accordingly, in the fall of 1819, they visited the city of Richmond, had an interview with Mrs. Green-how and her agent, and proposed to purchase the land; that Mrs. Greenhow seemed to *know little about the land, except that she claimed a tract of mountain land somewhere, and that she was willing to sell the same; that in the spring or summer of 1820, the said Massie again visited the city of Richmond, had an interview with the agent of Mrs. Greenhow, and found her willing to sell, and the terms of sale were agreed on. But on investigation *744 Mrs. Greenhow could not, or did not produce any title whatever to the land; nor could she or her agent inform Massie where to look for a title, except in the clerk’s office of Amherst county. Massie then returned home and, being anxious to buy the land, diligently examined the office of Amherst county, and could find no title that Mrs. Greenhow had to the land in controversy, or any. other land. Soon thereafter Jacobs, who had agreed to unite in the purchase of the land with Massie, went to the city of Richmond and informed Mrs. Greenhow that no title to said land could be found, and that they could not pay for the land until the title was produced. It was then agreed to search the records of the General Court office, and on finding no title there the purchase was abandoned. This is the statement detailed in Massie’s answer.
Fitzpatrick, the other appellant, in his answer states, that about 1836, and' before the sale by Ewell’s heirs to Slade, he wrote to some one in Richmond to enquire as to Mrs. Greenhow’s title to the land, and what she would take for the same, and was informed in reply, that Mrs. Greenhow knew nothing of the title to the land, except that she had heal'd her husband say that he owned some land in Amherst or Nelson.
It further appears, that in 1813 there was a decree rendered in the Circuit Court for the District of Columbia, in which Samuel Greenhow was plaintiff, and Bertrand Ewell et ais. were defendants, decreeing a conveyance of said land to be made to Samuel Greenhow. The said Samuel Greenhow died in 1815, leaving his wife his sole dev-isee. She died in 1840. And that Bertrand Ewell stood on the records of Amherst *county, where the land was situated, as the holder of the legal title, by deed dated in 1799, and duly recorded; that the appellant Massie derived his title to said land in 1837, and the appellant Fitzpatrick derived his title in 1839, from Slade and wife, who owned one-sixth of the land, she being the daughter of Bertrand Ewell, the other five-sixths of the land having been purchased by Slade from the other heirs of B. Ewell; that they completed their purchases, took possession and held it undisturbed until January, 1848, when this suit was instituted.
Thus it appears that Mrs. Greenhow, as far back as 1815, supposed her husband had a claim to some land in the counties of Amherst or Nelson. She was-his sole dev-isee ; had been applied to to sell the land, and was willing and anxious to sell it in 1819 and 1820, and the only obstacle to the sale was, that she could produce no muniment of title; and under these circumstances she remained in a state of supineness and indifference as to her rights, up to the time of her death in 1840, a period of twenty years; and no s'uit is instituted to assert her right, or the rights of those claiming under her, for a period of upwards of thirty-four years from the time her equity was ascertained by the decree of 1817. If, then, it be true, as was said by Lord Camden in Smith v. Clay, 3 Brown Ch. R. 639, “that a court of equity has always refused its aid to stale demands where the party has slept on his rights and acquiesced for a length of time,’’ and that “nothing can call a court of equity into activity but conscience, good faith and reasonable diligence,” what standing have these appellees in this court? The general rule in equity is, “that every right of action in equity that accrues to a party must be acted on at the utmost within twenty years,” and there is nothing in the pleadings or proofs in these causes to exempt the appellees from the operation of this rule.
The claimant of this equity labored under no disability. There was no mala fides on the part of the purchasers. Mrs. Greenhow was sui juris from 1815 *to 1840, the time of her death, about a quarter of a century, and no effort was made during this period to ascertain her rights or to enforce them. The purchasers were diligent in their efforts to ascertain the real owner of the land. They had heard from rumor, which they were not bound to notice, that Mrs. Greenhow had some claim to this land. But they did not notice it, and applied to her for information, and on her naked assertion of title they searched the records of Amherst county and the General Court office, and did all in their power to ascertain whether she had in fact any title to this land or not.
In the meantime, warrants are laid on this land as waste and unappropriated, and Slade, the holder of the legal title, claiming under Bertrand Ewell, interferes and' arrests these proceedings, asserts title to the property, takes possession of it, and makes sale of it to the appellants; and some eight or ten years after this undisturbed possession and purchase, and upwards of thirty-four years after the decree of 1817, this suit is instituted.
We think no precedent can be found that would justify a court of equity in opening its door .to a claimant of an equity against a purchaser of the legal title, after such a lapse of time, and under circumstances .indicating the grossest negligence. It is said, however, that these purchasers had actual notice of this equity, and this notice was given by Mrs. Greenhow. In notes to American Leading Cases in Equity, vol. 2, part 6, p. 111-12, the author says: “Actual notice is where the purchaser either knows of the existence of an adverse claim or title, or is conscious of having the means of knowledge, and does not use them, whether his knowledge is the result of a direct communication or is gathered from facts and circumstances;” and further on, speaking of communications by parties interested and strangers, he adds, “But from whatever quarter such communication comes, it must be sufficiently definite to enable the purchaser to ascertain whether it is authentic. ” ^“Notice,” he continues, “must therefore be certain in the sense of the legal rule, which *745 regards that as certain which may be reduced to certainty; and the question whether a statement made at the time of the purchase is to be considered as notice, seems to depend on, whether it is sufficiently clear and authentic to put the purchaser on en-quiry, and to enable him to conduct that enquiry to a successful termination. ’ ’ Now, what was Mrs. Greenhow’s statement? Nothing definite, nothing calculated to put the purchaser on enquiry, or to conduct him to successful termination, or to ascertain whether her statement was authentic or not. True, they searched the records of Amherst county and the office of the general Court, and finding no evidence of title there, the purchase was abandoned, because, as one of the respondents says, neither Mrs. Greenhow nor her agent “could put him on any trail by which he could find that she had any title.” It is impossible, then, that Mrs. Greenhow could have given such actual notice as the law requires. Hers was emphatically a latent equity, buried among the records of a foreign jurisdiction, and raked up after her death, and thirty years after it was ascertained by parties more vigilant and active than she was. She did not know where it was hid, and therefore could not inform others.
The court is therefore of opinion, that the decrees pronounced in these causes are erroneous, and that the same be reversed and annulled, and that the appellants recover against the appellees their costs expended in prosecuting their appeals here. And this court, proceeding to render such decrees as the court below ought to have rendered, it is ordered and decreed, that the bills of the complainants be dismissed as to the appellants, the defendants in the court below, with costs.
CLOPTON, J., and FIELD, P., concurred.